**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| MICHAEL W. ALLEGRETTI, CHANDRA V. BROWN-DAVIS, YOLANDA BROWN, RONALD DINKEL, SIOBHAN E. FANNIN, KRISTIE KOLACNY, DIANNA J. MARTIN, SHERRI NELSON, BECKY S. RAY, SCOTT C. READ, TIMOTHY M. RENAUD, LISA SMITH, SUSAN WEEKS, AND ANDRO D. YOUSSEF, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>WALGREEN CO.; THE RETIREMENT PLAN COMMITTEE OF THE WALGREEN PROFIT-SHARING RETIREMENT PLAN; THE TRUSTEES OF THE WALGREEN PROFIT-SHARING RETIREMENT TRUST; THE BOARD OF DIRECTORS OF WALGREEN CO.,<br><br>Defendants. | Case No. 1:19−cv−05392<br><br>**MEMORANDUM IN SUPPORT OF PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>Hon. Charles R. Norgle |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION
FOR ENTRY OF PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

**INTRODUCTION**

This ERISA class action has been pending for more than two years. Now, Plaintiffs seek preliminary approval of a settlement that provides substantial relief to a Class of approximately 195,000 current and former participants in the Walgreen Profit-Sharing Retirement Plan (the "Plan")[1]: a settlement fund of $13,750,000 and non-monetary relief including confirmation of the removal of the Northern Trust Focus Target Retirement Trusts from the Plan in connection with a Request for Proposal, among other provisions (the "Settlement").

Plaintiffs seek an order preliminarily approving the Settlement. The Settlement was negotiated at arm's length, provides robust monetary and programmatic relief tailored to the alleged violations, and contains no deficiencies that prevent approval. The Parties reached the Settlement after significant discovery, a mediation session with an independent mediator, and months of arms-length negotiation. This extensive process allowed the Parties to fully understand the value of their claims and the risks of litigation. As a result, the Parties reached an agreement that presents substantial benefits to the Class Members and promotes judicial economy. Class Counsel, Sanford Heisler Sharp, LLP, believes the Settlement provides fair, reasonable, and adequate relief to the Class Members.

Under the terms, Defendants will pay $13,750,000 into a Settlement Fund, which will be allocated among Class Members (after deduction of attorneys' fees, expenses, and a proposed class representative award) in proportion to their ownership in the Challenged Funds.[2] In addition,

---

[1] While Defendants previously indicated that the class included 240,922 unique participants, *See* Dkt. No. 69-3 ¶ 7, further data from the Plan's recordkeepers now shows that there are approximately 195,000 class members.

[2] The Challenged Funds are eight funds in total: (1) Northern Trust Focus 2020 Fund; (2) Northern Trust Focus 2025 Fund; (3) Northern Trust Focus 2030 Fund; (4) Northern Trust Focus 2035 Fund; (5) Northern Trust Focus 2040 Fund; (6) Northern Trust Focus 2045 Fund; (7) Northern Trust

Defendants have removed the Northern Trust Focus Target Retirement Trusts from the Plan. Defendants must comply with this programmatic relief for a 3-year period and use an investment advisor to provide ongoing investment monitoring services for the Plan. Pursuant to applicable Department of Labor regulations and the Settlement Agreement, an independent fiduciary will review the Settlement for fairness.

Plaintiffs respectfully ask the Court to: (1) grant preliminary approval of the Settlement; (2) enjoin Class Members from pursuing any claims that arise out of or relate to the claims at issue in this action pending final approval; (3) direct notice to Class Members and approve the plan and form of notice, including the procedure for objecting to the Settlement; (4) appoint Analytics LLC as Settlement Administrator and Escrow Agent; (5) schedule a final Fairness Hearing; (6) schedule a hearing on Class Counsel's forthcoming application for fees and costs and the payment of Class Representative Compensation awards; and (7) approve the CAFA notice form.

**SUMMARY OF CLAIMS AND DEFENSES**

Plaintiffs, individually and as representatives of the Class of current and former participants of the Walgreen Profit-Sharing Retirement Plan (the "Plan"), filed this Class Action against Defendants on August 9, 2019. Dkt. No. 1. Plaintiffs allege that Defendants breached their fiduciary duties under the Employee Retirement Income Security Act, 29 U.S.C. §§1001, *et seq* ("ERISA") by imprudently selecting, retaining, and monitoring a suite of poorly performing funds—the Northern Trust Focus Funds—for the Plan's investment menu. *E.g.* Dkt. No. 67 ¶ 3-5, 126-37. Defendants deny the allegations and contend that their process for monitoring the Challenged Funds complied with the fiduciary standards under ERISA. Defendants also contend

---

Focus 2050 Fund; and (8) Northern Trust Focus 2055 Fund. Also, the capitalized terms not defined in this memorandum have the same meaning ascribed to them in the Settlement Agreemt.

that each of the Challenged Funds was a reasonable investment option. Plaintiffs have hired an expert who calculated potential damages of approximately $34 million based on the investment performance of Morningstar target date fund peer universe as of January 1, 2018.[3] C. Field Decl. ¶ 12. Defendants dispute Plaintiffs' expert's damage calculations.

**LITIGATION HISTORY AND SETTLEMENT NEGOTIATIONS**

Class Counsel thoroughly investigated the claims alleged in the Compliant, starting months before filing the Complaint and continuing through extensive discovery. The Parties first attempted mediation in August 2020. After mediation failed, the Parties engaged in further discovery. They resumed negotiations in earnest after extensive document production and a 30(b)(6) deposition.

**A. Pre-Filing Investigation**

Prior to the filing of the original complaint, Sanford Heisler Sharp attorneys and staff undertook a thorough and careful investigation, spanning several months, that entailed:

a) Examining Plan documents;

b) Reviewing Department of Labor filings on Form 5500;

c) Assessing the investment structure and investment objectives of each Plan option based upon filings made with the Securities and Exchange Commission ("SEC");

d) Reviewing SEC filings of Northern Trust and its affiliated investment advisors;

e) Interviewing over 160 current and former Plan participants to assess their claims;

f) Identifying appropriate benchmarks and comparator funds;

g) Calculating the 10-year performance of each of the Plan's investment options relative to the selected benchmarks and comparator funds and ascertaining potential injury

---

[3] Morningstar is a financial research firm that provides data and analysis on a wide range of investment offerings. See Morningstar, *Who We Are*, WWW.MORNINGSTAR.COM, https://www.morningstar.com/company (last visited Sept. 8, 2021).

  to the Plan; and;

  h)  Conducting legal research.

C. Field Decl. ¶7. The analysis by Class Counsel is evident throughout the 56-page, two-count Second Amended Complaint, particularly in Section VI. *See* Dkt. No. 67.

### B. Litigation

After Plaintiffs filed the Amended Class Action Complaint, Dkt. No. 35, Defendants moved to dismiss on November 4, 2019. Dkt. No. 37. On March 16, 2020, the Court denied Defendants' motions on all counts, except for Plaintiffs' standing to bring claims based on two funds in which they had not personally invested. Dkt. No. 46. On December 4, 2020, Plaintiffs filed an Unopposed Motion for Class Certification under Rule 23(b)(1) and Appointment of Class Counsel. Dkt. No. 68. The Court granted the motion on February 11, 2021, certifying a class of all participants who held assets in the Challenged Funds from January 1, 2014 through the date of judgment, and appointed Charles Field, Kevin Sharp, David Tracey, Danielle Fuschetti, and Sanford Heisler Sharp LLP as Class Counsel. Dkt. No. 73.

During fact discovery, Plaintiffs produced and received documents, served and responded to interrogatories, and deposed Defendants' 30(b)(6) witness on the Plan's fiduciaries' investment and monitoring process. The many thousands of documents Plaintiffs reviewed included the Plan's Investment Policy Statements, minutes and reports for the quarterly and special meetings of the Plan, minutes and resolutions of the Walgreen's Board of Directors, service agreements with Plan consultants, Summary Plan Descriptions, disclosure documents, and documents relating to the Challenged Funds. In addition, Plaintiffs served subpoenas on third parties to produce documents relating to the Challenged Funds. The third parties included the Plan's pension consultant, Ellwood & Associates, and the Challenged Funds' investment manager, Northern Trust. Plaintiffs also hired

an expert to consult on the Class's potential damages.

### C. Negotiations and Settlement

The Parties agreed to mediation after evaluating the strengths and weaknesses of the claims and defenses. On August 3, 2020, the Parties mediated before a highly respected Judicial Arbitration and Mediation Services ("JAMS") mediator, Robert Meyer, Esq. After extensive negotiations, the Parties failed to reach a resolution. However, after conducting further discovery, the Parties resumed negotiations. As a result, the Parties reached an agreement that included the $13,750,000 settlement fund and various non-monetary relief, including confirmation of the removal of the Northern Trust Focus Funds from the Plan in connection with a Request for Proposal. *See* Settlement Agreement ("Ex. 1") ¶¶ 2.25, 10.1.

### D. Plaintiffs' Services to the Class Members

Plaintiffs Martin, Kolacny, Allegretti, Nelson, Read, Renaud, Brown, Youssef, Ray, Brown-Davis, Smith, Dinkel, Fannin, and Weeks, current and former Walgreen employees who had each invested in at least one of the Challenged Funds, have been involved throughout the litigation and have contributed to the investigation, discovery, and settlement of the class claims. Plaintiffs have spent significant time in service to the Class, consulting with Class Counsel on a variety of issues and reviewing and providing input on the Complaint. Plaintiffs gathered documents and responded to Requests for Productions and interrogatories. Plaintiffs also spent hours speaking with Class Counsel to help them understand the Plan and Defendants' practices related to the Plan. Plaintiffs have faithfully attended to their duties to act on behalf of other Plan participants. Plaintiffs understand their responsibilities as the representatives of Class Members and have been in regular contact with Class Counsel to monitor the Class Action and provide important input and advice, including in settlement negotiations. *See* D. Martin Decl. ¶¶ 3–7; K.

5

Kolacny Decl. ¶¶ 3–7; M. Allegretti Decl. ¶¶ 3–7; S. Nelson Decl. ¶¶ 3–7; S. Read Decl. ¶¶ 3–7; T. Renaud Decl. ¶¶ 3–7; Y. Brown Decl. ¶¶ 3–7; A. Youssef Decl. ¶¶ 3–7; B. Ray Decl. ¶¶ 3–7; C. Brown-Davis Decl. ¶¶ 3–7; L. Smith Decl. ¶¶ 3–7; R. Dinkel Decl. ¶¶ 3–7; S. Fannin Decl. ¶¶ 3–7; S. Weeks Decl. ¶¶ 3–7.

**OVERVIEW OF THE SETTLEMENT AND PLAN OF ALLOCATION TERMS**

### A. Settlement Class Members

Under the Settlement, the Settlement Class shall mean all participants and beneficiaries of the Plan who invested in any of the Challenged Funds during the Class Period.[4]

### B. Monetary Relief

Under the Settlement, Defendants will pay $13,750,000 into the Settlement Fund. Following any deductions for Court-approved (a) attorneys' fees and costs, (b) class representative awards, (c) administrative expenses, and (d) independent fiduciary costs, the net Settlement Amount will be distributed to Class Members according to the Plan of Allocation. The Settlement Administrator shall calculate each Class Member's Entitlement Amount based on each Member's total assets in the Challenged Funds and each Fund's quarterly performance. *See* Ex. 1 ¶¶ 2 & 6.4.

Within fourteen (14) calendar days of preliminary approval of the settlement, Defendants will deposit $1,000,000 into the Qualified Settlement Fund. *See* Ex. 1 ¶5.4. Within twenty-five (25) calendar days after the Settlement Effective Date, the Defendants shall deposit twelve million seven hundred fifty thousand dollars ($12,750,000) into the Settlement Fund. *See* Ex. 1 ¶ 5.5.

### C. Non-Monetary Relief

Defendants have confirmed the removal and replacement of the Northern Trust Focus

---

[4] The Class definition specifically excludes 23 officers, agents, and employees of Defendants. *See* Ex. 1 at ¶ 2.41.

Funds from the Plan. *See* Ex. 1 ¶ 10.1. For a period of three years, Defendants have agreed to use an investment advisor to provide on-going investment monitoring services for the Plan. *See* Ex. 1 ¶¶ 2.43, 10.2.

### D. Review by Independent Fiduciary

Defendants will retain an Independent Fiduciary to review the Settlement on behalf of the Plan in accordance with Department of Labor Regulations. *See* Ex. 1 ¶ 3.1; *see also* Prohibited Transaction Exemption 2003-39, 68 Fed. Reg. 75632, as amended, 75 Fed. Reg. 33830 ("PTE 2003-39"). All reasonable costs and expenses of the Independent Fiduciary shall be borne by the Gross Settlement Amount. *See* Ex. 1 ¶¶ 3.1, 3.1.3. The Parties will provide the Independent Fiduciary with sufficient information to support its evaluation. *See* Ex. 1 ¶ 3.1.4. The Independent Fiduciary will issue its report at least thirty (30) calendar days prior to the Fairness Hearing. *See* Ex. 1 ¶ 3.1.2. Should the Independent Fiduciary decline to approve the Settlement, the Settlement Agreement shall automatically terminate. *See* Ex. 1 ¶¶ 11.1–11.1.1.

### E. Attorneys' Fees and Expenses

Plaintiff's Counsel will apply for reasonable attorneys' fees and reimbursement of their out-of-pocket costs in a combined amount totaling $4,583,333.33, or one-third of the $13,750,000 million value of the Gross Settlement Amount. *See* Ex. 1 ¶ 7.1. Subject to Court approval, Class Counsel's Attorneys' Fees and Costs shall be paid from the Gross Settlement Amount prior to distribution to Class Members. *See* Ex. 1 ¶¶ 5.8.

### F. Class Representative Compensation Awards

Plaintiffs shall petition the Court for class representative compensation awards not to exceed $15,000 each in recognition of their service as Class Representatives. *See* Ex. 1 ¶ 7.1. Such awards compensate plaintiffs for the efforts and risks they have undertaken, without which no

7

settlement would be possible. Further, they provide an incentive for other employees to bring cases that vindicate the public's interest in having retirement funds prudently managed. *See, e.g., Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998).

### G. Release of Claims

In exchange for the relief provided by the Settlement, Class Members will release Defendants and affiliated persons from all Released Claims, defined as:

> any and all actual or potential claims that were asserted or could have been asserted in the Litigation and that arise from or relate to: (a) the conduct alleged in the complaints in this Litigation, whether or not included as counts in the complaints; (b) the selection, retention, use, or monitoring of the investment options offered in the Plan, including but not limited to the Challenged Funds; (c) the performance, fees, costs, expenses, and other characteristics of the Plan's investment options, including but not limited to the Challenged Funds; (d) the nomination, appointment, retention, monitoring, and removal of the Plan's Committee members; (e) the Plan's investment structure; (f) the compensation received by the Plan's service providers and investment advisors; and (g) alleged breach of the duty of loyalty, care, prudence, diversification, or any other fiduciary duties or prohibited transactions.

*See* Ex. 1 ¶ 2.36. For the avoidance of doubt, Released Claims exclude (1) claims of individual denial of benefits under the Plan; and (2) claims to enforce the Settlement Agreement. *See id*.

### H. Class Notice and Settlement Administration

Class Members will receive a notice of the Settlement ("Class Notice") via electronic mail and/or first-class mail. *See* Ex. 1 ¶ 3.2.4. The Class Notice sent to former participants will include a Former Participant Rollover Form enabling them to elect to receive their payments through a

rollover into an eligible retirement account. *See* Ex. 1 ¶¶ 3.2.4, 6.7. The Class Notice shall inform Class Members of the Fairness Hearing to be held before the Court, on a date to be determined by the Court, at which Class Members may be heard regarding: (a) the terms of the Settlement Agreement; (b) the petition of Class Counsel for award of Attorneys' Fees and Costs; (c) payment of and reserve for Administrative Expenses; and (d) Class Representatives' Compensation. *See* Ex. 1 ¶ 2.9. In addition, the Class Notice will include contact information for Class Counsel whom Class Members may contact for information. The Class Notice shall also inform Former Participants of the Rollover Deadline by which they must file a completed Former Participant Rollover Form to be eligible for a rollover from the Qualified Settlement Fund to the individual retirement account or other eligible employer plan elected by the Former Participant. *See id.*

The Settlement Administrator will establish a website that users can access for important information and the following documents: the operative complaint, the Settlement Agreement and its Exhibits, Class Notice, Former Participant Rollover Form, Class Representatives' Motion for Attorneys' Fees and Costs and Award of Compensation to Class Representatives, any Court orders related to the Settlement, any amendments or revisions to these documents, and any other documents or information mutually agreed upon by the Settling Parties. *See* Ex. 1 ¶¶ 12.3, 3.4.1.

**ARGUMENT**

It is well established within the Seventh Circuit that "Federal courts naturally favor the settlement of class action litigation." *Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996). Further, "there is an overriding public interest in favor of settlement" because "[s]ettlement of the complex disputes often involved in class actions minimizes the litigation expenses of both parties and also reduces the strain such litigation imposes upon already scarce judicial resources." *Armstrong v. Bd. of Sch. Directors of City of Milwaukee*, 616 F.2d 305, 313 (7th Cir. 1980) *overruled on other*

*grounds* by *Felzen v. Andreas*, 134 F.3d 873 (7th Cir. 1998).

Under Rule 23(e)(1), preliminary approval requires the Court to evaluate whether it will likely approve the settlement proposal under Rule 23(e)(2). To do so, courts consider: "(1) the strength of plaintiffs' case compared to the terms of the proposed settlement; (2) the likely complexity, length and expense of continued litigation; (3) the amount of opposition to settlement among affected parties; (4) the opinion of competent counsel; and (5) the stage of the proceedings and the amount of discovery completed." *In re AT&T Mobility Wireless Data Servs. Sales Litig.*, 270 F.R.D. 330, 346 (N.D. Ill. 2010). *Accord*, *In re: TikTok, Inc. Consumer Privacy Litigation,* 2021 WL 4478403, at *5 (N.D. Ill. Sept. 30, 2021) (noting these factors provide "longstanding guidance" for the analyses under Rule 23(e)(1) & (2)). Ultimately, "the district court must determine that a class action settlement is fair, adequate, and reasonable, and not a product of collusion." *Reynolds v. Beneficial Nat. Bank*, 288 F.3d 277, 279 (7th Cir. 2002).

**A. The Settlement Provides Fair and Reasonable Compensation**

Class Counsel's damage expert calculated damages to be approximately $34,000,000 if one compares the performance of Challenged Funds against the average performance of the Challenged Funds' Morningstar peer universes beginning on January 1, 2018. The Settlement compares favorably to other ERISA settlements. *See Clark v. Duke Univ.*, 2019 WL 2588029 (M.D.N.C. 2019) (approving $10.65 million dollar monetary settlement in case with total estimated damages of over $300 million); *Sims v. BB&T Corp.*, 2019 WL 1995314, at *5 (M.D.N.C. May 6, 2019) (approving $24 million ERISA 401(k) settlement).

In addition, the Parties developed neutral methods to apportion fairly the relief between Class Members. Using a settlement allocation scoring system, all Class Members will receive a pro rata share of the Settlement Fund based on their total investment amount in the Challenged

Funds and the relative quarterly performance of their holdings in the Challenged Funds. *See* Ex. 1 ¶ 6.4. Class Counsel's damage expert confirmed that this method of allocation was standard and equitable. C. Field Decl. ¶ 3. *see also Zilhaver v. UnitedHealth Group, Inc*., 646 F. Supp. 2d 1075, 1080 (D. Minn. 2009) (finding allocation method reasonable where proceeds would be distributed in proportion to class members' calculated losses with a minimum recovery of $10).

Current participants' awards will be deposited directly into their 401(k) accounts. *See* Ex. 1 ¶ 6.5.2. Former participants will receive direct payments by check but can elect to have their distributions rolled over into an eligible retirement account. *See* Ex. 1 ¶¶ 6.7–6.9. This is consistent with other settlements and will minimize taxes as well as inefficiencies resulting from uncashed checks. *See e.g., Dennard v. Transamerica*, No. C15-0030 (N.D. Iowa May 20, 2016), Dkt. No. 86-1 at 42; *Moreno v. Deutsche Bank Americas Holding Corp*., No. 15-cv-9936 (S.D.N.Y. Aug. 14, 2018), Dkt. No. 321 at 8.

## B    The Settlement Avoids the Significant Risks and Uncertainty of Litigation

Significant risk and uncertainty exist regarding proof of liability or damages. Plaintiffs' claims rest on a breach of ERISA's duty of prudence. Evaluating prudent conduct requires consideration of both the substantive reasonableness of the fiduciary's actions and the procedures by which the fiduciary made its decision. *Fish v. GreatBanc Trust Co*. 749 F.3d 671, 680 (7th Cir. 2014). Plaintiffs must prove that Defendants' process failed to "(1) employ proper methods to investigate, evaluate and structure the investment; (2) act in a manner as would others who have a capacity and familiarity with such matters; [or] (3) exercise independent judgment when making investment decisions." *Boeckman v. A.G. Edwards, Inc*., No. CIV. 05-658-GPM, 2007 WL 4225740, at *3 (S.D. Ill. Aug. 31, 2007) (quotation omitted). Plaintiffs must prove that Defendants breached their duty to monitor the Challenged Funds and failed to timely remove them, and, as a

11

result, the Plan suffered investment losses. *See Leigh v. Engle*, 727 F.2d 113, 137 (7th Cir. 1984).

Also at issue is whether the peer universes Plaintiffs have identified were in fact comparable to the Challenged Funds and whether any underperformance identified is solely the product of hindsight. *See Bell v. Pension Comm. of ATH Holding Co., LLC*, No. 115CV02062TWPMPB, 2019 WL 387214, at *5-6 (S.D. Ind. Jan. 30, 2019); *George v. Kraft Foods Glob., Inc.*, 814 F. Supp. 2d 832, 841 (N.D. Ill. 2011). If Plaintiffs fail on any of these points, their recovery could be lost all together. Defendants vigorously contest liability and damages, and Plaintiffs would still need to prevail at summary judgment, trial, and on appeal.

Finally, damages are uncertain and a likely subject of expert testimony. *See Trustees of Chicago Plastering Inst. Pension Fund v. R.G. Const. Servs., Inc.*, No. 05 C 5669, 2009 WL 1733036, at *17 (N.D. Ill. June 16, 2009) (noting that the amount of damages depends on expert calculations); *see also In re Milken & Assoc. Sec. Lit.*, 150 F.R.D. 46, 54 (S.D.N.Y. 1993) (approving settlement; noting damage calculations are often a "battle of experts" "with no guarantee of the outcome"). Plaintiffs anticipate that Defendants will seek to exclude and/or diminish the weight of Plaintiffs' expert reports and submit a competing damages calculation with reduced damages. These factors weigh in favor of approval.

### C. The Significant Complexity, Length, and Expense Favors Approval

Absent settlement, "protracted litigation would likely ensue," leading to greater expenses for the Parties as "[t]he costs associated with discovery in complex class actions can be significant." *Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560, 586 (N.D. Ill. 2011). The Parties would need to exchange expert reports and rebuttal reports, undertake expert and numerous fact witness depositions, engage in significant motions practice, and proceed to trial on the merits. Plaintiffs anticipate that complex legal questions will potentially give rise to an appeal, likely

lasting years. Accordingly, this factor weighs in favor of preliminary approval. *See id.*

### D. There is No Current Opposition to the Settlement

Currently, there is no opposition to the Settlement. The Class Representatives support the proposed settlement and believe that it is fair and reasonable. *See* D. Martin Decl. ¶ 7; K. Kolacny Decl. ¶ 7; M. Allegretti Decl. ¶ 7; S. Nelson Decl. ¶ 7; S. Read Decl. ¶ 7; T. Renaud Decl. ¶ 7; Y. Brown Decl. ¶ 7; A. Youssef Decl. ¶ 7; B. Ray Decl. ¶ 7; C. Brown-Davis Decl. ¶ 7; L. Smith Decl. ¶ 7; R. Dinkel Decl. ¶ 7; S. Fannin Decl. ¶ 7; S. Weeks Decl. ¶ 7. Accordingly, this factor also favors approval at this stage.

### E. Opinion of Competent Counsel

Class Counsel believes the Settlement is fair, reasonable, and adequate and, will provide outstanding benefit to the Class as a whole. Class Counsel has extensive experience in complex class litigation, including negotiating numerous successful settlements. *See* C. Field Decl. ¶¶ 1,13-27. This weighs in favor of the approval of the preliminary settlement. See *Retsky Fam. Ltd. P'ship v. Price Waterhouse LLP*, No. 97 C 7694, 2001 WL 1568856, at *3 (N.D. Ill. Dec. 10, 2001) ("Therefore, [plaintiffs' counsel's] opinion that the settlement is fair, reasonable and adequate also favors approval of the settlement."). There is no indication of fraud or collusion "and an absence of collusion is reasonably inferred in light of the fact that the adversarial process of this litigation has been vigorous during the course of the dispute." *Khoday v. Symantec Corp.*, No. 11-CV-180 2016 WL 1637039, at *8 (D. Minn. Apr. 5, 2016), report and recommendation adopted, 2016 WL 1626836 (D. Minn. Apr. 22, 2016), *aff'd*, *Caligiuri v. Symantec Corp.*, 855 F.3d 860 (8th Cir. 2017).

### F. The Stage of the Proceedings and the Amount of Discovery Completed

Given the extensive discovery in this case, the Parties understand the strengths and

13

weakness of their respective positions. Indeed, courts have frequently weighed this factor in favor of preliminary settlement approval when far less, and sometimes zero, formal discovery has been conducted. *See In re AT & T Mobility Wireless Data Servs. Sales Tax Litig.*, 789 F. Supp. 2d 935, 967 (N.D. Ill. 2011); *In re Elan Sec. Litig.*, 385 F. Supp. 2d 363, 369–70 (S.D.N.Y. 2005).

### G. Proposed Attorneys' Fees Present No Obstacle to Approval

When attorney's fees are awarded, "the measure of what is reasonable [as an attorney fee] is what an attorney would receive from a paying client in a similar case." *Montgomery v. Aetna Plywood, Inc.*, 231 F.3d 399, 408 (7th Cir. 2000). In determining a reasonable fee, the Seventh Circuit applies the percentage basis rather than a lodestar. *See Abbott v. Lockheed Martin Corp.*, 2015 WL 4398475, at *2 (S.D. Ill. July 17, 2015). Additionally, courts in the Seventh Circuit routinely approve a one-third fee as reasonable. *See id.*; *Will v. Gen. Dynamics Corp.*, 2010 WL 4818174, at *3 (S.D. Ill. Nov. 22, 2010) (approving a one-third fee and "agree[ing] that a one-third fee is consistent with the market rate" for "complex plaintiffs' attorney work" in an ERISA class action). Class Counsel's intent to request attorneys' fees and reimbursement of out-of-pocket costs in an amount totaling $4,583,333.33, or one-third of the $13,750,000 award, is consistent with Seventh Circuit precedent and is not an obstacle to the Court in granting preliminary approval.

### H. Proposed Compensation Awards Are No Obstacle to Approval

Class representatives' efforts will result in providing the Class with a cash recovery of $13,750,000. Under similar circumstances, courts within this Circuit have authorized comparable service awards. *See Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998) (affirming $25,000 incentive fee award to class representative out of $14 million fund); *Heekin v. Anthem, Inc.*, No. 05-cv-1908, 2012 WL 5878032, at *1 (S.D. Ind. Nov. 20, 2012) (approving $25,000 service awards); *In re Sw. Airlines Voucher Litig.*, No. 11 C 8176, 2013 WL 4510197, at *11 (N.D. Ill.

14

Aug. 26, 2013) (approving $15,000 service awards). Accordingly, an award of $15,000 is not an obstacle to the Court granting preliminary approval.

**II. THE CLASS IS PROPERLY CERTIFIED AND NOTICE SHOULD BE APPROVED**

Rule 23(e)(1) also requires the court to "certify the class for purposes of judgment on the proposal" and to determine whether class notice is warranted. Here, the Court has already certified the Class[5] and appointed Class Counsel and Class Representatives. Dkt. No. 73. No facts have changed to disturb this ruling. Furthermore, the notice program set forth in the proposed Preliminary Approval Order and outlined in ¶ 3 of the Settlement Agreement satisfies all the requirements of Rule 23: it provides the best practicable notice under the circumstances and is reasonably calculated to reach substantially all members of the Class. Class Notices will be directly mailed/e-mailed to all Class Members and published on the Settlement website. The proposed Class Notice is clear, accurate, comprehensible, and satisfies due process. *See* Field Decl. Ex. 4 (Proposed Class Notice). Furthermore, Class Counsel has hired a capable administrator, Analytics LLC, with particularly deep experience in ERISA settlements, to serve as Settlement Administrator and Escrow Agent. *See* C. Field Decl. Ex. 8.

**CONCLUSION**

The proposed settlement easily satisfies the criteria for preliminary approval. The Court should grant this Motion, enter the attached Proposed Order, and direct Notice to the Class so that Class Members have an opportunity to weigh in on the fairness, reasonableness, and adequacy of the settlement. Then, the Court may proceed to consider whether the Settlement should receive final approval.

---

[5] The Settlement Agreement slightly modifies the certified Class's definition by specifically identifying 23 officers, agents, and employees of Defendants who are excluded from the Settlement. *See* Ex. 1 at ¶ 2.41.

Dated: October 22, 2021

        Respectfully submitted,

        <u>/s/ Charles Field</u>
        *Charles Field
        **SANFORD HEISLER SHARP, LLP**
        2550 Fifth Avenue, 11th Floor
        San Diego, CA 92103
        Telephone: (619) 577-4242
        Facsimile: (619) 577-4250
        cfield@sanfordheisler.com

        *David Tracey
        **SANFORD HEISLER SHARP, LLP**
        1350 Avenue of the Americas, 31st Floor
        New York, NY 10019
        Phone: (646) 402-5650
        Facsimile: (646) 402-5651
        dtracey@sanfordheisler.com

        *Kevin Sharp
        **SANFORD HEISLER SHARP, LLP**
        611 Commerce Street, Suite 3100
        Nashville, TN 37203
        Ksharp@sanfordheisler.com

        *Danielle Fuschetti
        **SANFORD HEISLER SHARP, LLP**
        111 Sutter Street, Suite 975
        San Francisco, CA 94104
        DFuschetti@sanfordheisler.com

        * *pro hac vice admitted*

        Anthony L Parkhill
        Ben Barnow
        **Barnow and Associates, P.C.**
        205 West Randolph
        Suite 1630
        Chicago, IL 60606
        (312) 621-2000
        Email: b.barnow@barnowlaw.com

        *Attorneys for Plaintiffs*